IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| BLUE MINT PHARMCO LLC and JONA RUSHIN, R.PH., <br><br> Plaintiffs, <br><br> v. <br><br> TEXAS STATE BOARD OF PHARMACY ("Board"); JULIE SPIER, R.PH., in her official capacity and individually; LORI HENKE, PHARM.D., in her official capacity and individually; RICK FERNANDEZ, R.PH., in his official capacity and individually; DONNIE LEWIS, R.PH., in his official capacity and individually; JENNY DOWNING YOAKUM, R.PH., in her official capacity and individually; DANIEL GUERRERO, in his official capacity and individually; BRADLEY MILLER, PH.T.R., in his official capacity and individually; DONNA MONTEMAYOR, P.PH., in her official capacity and individually; IAN SHAW, in his official capacity and individually; SUZETTE TIJERINA, R.PH., in her official capacity and individually; RICK TISCH, in his official capacity and individually; and TIM TUCKER, R.Ph. in his official capacity and individually, <br><br> Defendants. | Civil Action No. 22-561 |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, DAMAGES, AND DEMAND FOR JURY TRIAL**

1

Plaintiffs Blue Mint Pharmco, LLC and Jona Rushin. R.Ph. ("Plaintiffs") respectfully allege as follows in support of this Complaint for declaratory judgment, preliminary and permanent injunction, and compensatory damages pursuant to 42 U.S.C. § 1983, and demand for jury trial against defendants the Texas State Board of Pharmacy ("Board"), Julie Spier, R.Ph., Lori Henke, Pharm.D., Rick Fernandez, R.Ph., Donnie Lewis, R.Ph., Jenny Downing Yoakum, R. Ph., Daniel Guerrero, Bradley Miller, Ph.T.R., Donna Montemayor, R.Ph., Ian Shaw, Suzette Tijerina, R.Ph., and Rick Tisch (collectively, "Defendants").

# I.
# INTRODUCTION

1.     Plaintiffs bring this action under 42 U.S.C. §§ 1981, 1983, and the Fourteenth Amendment to the United States Constitution to end the pervasive and continuing violations of their constitutional rights by the Defendants, including the Board and its members acting in their official capacity and individually. Plaintiffs seek, among other relief, declaratory judgment that Defendants' unlawful administration of disciplinary proceedings denied Plaintiffs procedural and substantive due process guaranteed by the Fourteenth Amendment, and that Defendants racially discriminate in their regulation of pharmacists and pharmacies licensed in the State of Texas in violation of the Equal Protection Clause of the United States Constitution. Plaintiffs further seek injunctive relief enjoining Defendants from continuing violations of Plaintiffs' rights and compensatory damages.

## II.
## THE PARTIES

2.      Plaintiff Blue Mint Pharmco LLC ("Blue Mint") is a limited liability company organized and existing under the laws of the State of Texas. Blue Mint owns Blue Mint Pharmacy ("Pharmacy"), which holds an active Texas Pharmacy License. The Pharmacy provides services in a predominantly low-income, African American community in and around Houston, Texas. Blue Mint is an African American owned business. At all times relevant to this Complaint, Blue Mint has constitutionally protected liberty and property interests in its pharmacy license and economic well-being.

3.      Plaintiff Jona Rushin, R.Ph. ("Rushin") is an African American pharmacist licensed in the State of Texas. At all times relevant to this Complaint, Rushin has constitutionally protected liberty and property interests in her pharmacist license and economic well-being.

4.      Defendant Texas State Board of Pharmacy ("Board") is a state regulatory body that licenses and disciplines pharmacists and pharmacies.

5.      Defendant Julie Spier, R.Ph. ("Spier") is a member of the Board.

6.      Defendant Lori Henke, Pharm.D. ("Henke") is a member of the Board.

7.      Defendant Rick Fernandez, R.Ph. ("Fernandez") is a member of the Board.

8.      Defendant Donnie Lewis, R.Ph. ("Lewis") is a member of the Board.

9.      Defendant Jenny Downing Yoakum, R.Ph. ("Yoakum") is a member of the Board.

10.     Defendant Daniel Guerrero ("Guerrero") is a member of the Board.

11. Defendant Bradley A. Miller, Ph.T.R. ("Miller") is a member of the Board.

12. Defendant Donna Montemayor, R.Ph. ("Montemayor") is a member of the Board.

13. Defendant Ian Shaw ("Shaw") is a member of the Board.

14. Defendant Suzette Tijerina, R.Ph. ("Tijerina") is a member of the Board.

15. Defendant Rick Tisch ("Tisch") is a member of the Board.

## III.
## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction over the federal claims under 28 U.S.C §§ 1331 and 1342, as this action arises under the Fourteenth Amendment to the United States Constitution and is brought to redress the deprivation, under color of state law, of rights, privileges, and immunities secured by the United States Constitution. This Court is further authorized to grant the requested relief pursuant to 28 U.S.C. §§ 2201, 2202, and 42 U.S.C. § 1983.

17. Venue is proper in the Southern District of Texas under 28 U.S.C. § 1391 on the provisions of 28 U.S.C. § 1391 because the events giving rise to Plaintiffs' claims occurred in the Southern District of Texas.

## IV.
## BACKGROUND ALLEGATIONS

**A.   Prescription Drug Abuse and Texas Health & Safety Code § 481.0761**

18. In 2017, the Texas State Legislature passed HB 2561 that amended Health and Safety Code § 481.0761 and expanded the Board's authority to monitor and regulate prescriptions for controlled substances.

4

19. Specifically, the amendment added, among other provisions, Tex. Health & Safety Code § 481.0761(h), which directed the Board to

> identify prescribing practices that may be potentially harmful and patient prescription patterns that may suggest drug diversion or drug abuse. The board shall determine the conduct that constitutes a potentially harmful prescribing pattern or practice and develop indicators for levels of prescriber or patient activity that suggest a potentially harmful prescription pattern or practice may be occurring or drug diversion or drug abuse may be occurring.

20. Based on the indicators listed above, the Board was authorized to develop "guidelines identifying behavior suggesting a patient is obtaining controlled substances that indicate drug diversion or drug abuse is occurring." Tex. Health & Safety Code § 481.0761(j).

21. Tex. Health & Safety Code § 481.0761(k) further provides that the "guidelines may be based on the frequency of prescriptions issued to and filled by the patient, the types of controlled substances prescribed, and the number of prescribers who prescribe controlled substances to the patient."

22. HB 2561 also imposed a duty on a pharmacist who observes the indicators above with respect to a patient to access the patient's prescription history before dispensing opioids, benzodiazepines, barbiturates, or carisoprodol. Tex. Health & Safety Code §§ 481.0761(j) and 481.0764(a). A pharmacist's failure to comply with the statute is grounds for disciplinary action by the Board. Tex. Health & Safety Code § 481.0764(d).

23. A patient's prescription history is accessed through an electronic database known as the Texas Prescription Monitoring Program ("PMP"), which is maintained by the Board. In addition to a patient's prescription history, the PMP assigns a "PMP score" to a particular

5

patient, representing the patient's risk of overdose.

**B.     The Board's Red Flag Factors**

24.     In response, the Board promulgated new rules relating to the professional responsibilities of pharmacists that purported to comply with the directives of Tex. Health & Safety Code §§ 481.0761 and 481.0764.

25.     Pursuant to 22 Tex. Admin. Code § 291.29(f),

> A pharmacist shall not dispense a prescription drug if the pharmacist knows or should know the prescription drug order is fraudulent or forged. A pharmacists shall make every reasonable effort to prevent inappropriate dispensing due to fraudulent, forged, invalid, or medically inappropriate prescriptions in violation of a pharmacist's corresponding responsibility. . . .

26.     The section further enumerates a list of nineteen dispensing patterns, known as the "Red Flag Factors," that the Board deemed relevant to preventing nontherapeutic dispensing of controlled substances. *Id.* An evaluation of the Red Flag Factors was to be considered based on the totality of the circumstances rather than on any single factor. *Id.*

27.     The factors most relevant to the Complaint include:

> (1) the pharmacy dispenses a reasonably discernible pattern of substantially identical prescriptions for the same controlled substances, potentially paired with other drugs, to numerous persons, indicating a lack of individual drug therapy in prescriptions issued by the practitioner;
>
> (2) the pharmacy operates with a reasonably discernible pattern of overall low prescription dispensing volume, maintaining relatively consistent 1:1 ratio of controlled substances to dangerous drugs and/or over-the-counter products dispensed as prescriptions;
>
> (3) Prescriptions by a prescriber presented to the pharmacy are routinely for controlled substances commonly known to be abused drugs, including

>       opioids, benzodiazepines, muscle relaxants, psychostimulants, and/or cough syrups containing codeine, or any combination of these drugs;
>
>   (4) . . .
>
>   (5) Prescriptions for controlled substances are commonly for the highest strength of the drug and/or for large quantities (e.g., monthly supply), indicating a lack of individual drug therapy prescriptions issued by the practitioner; . . .

*Id.*

28. While the Board purports the Red Flag Factors to be a balancing test based on the circumstances presented, the Red Flag Factors are applied as a bright line rule based on statistical thresholds.

29. For example, a pharmacist can be found in violation of the first factor where the pharmacist dispenses controlled substances in a discernable pattern, regardless of whether the prescription was valid or whether the prescription was reasonable and medically necessary.

30. Accordingly, the Red Flag Factors require pharmacists to additionally fall within the arbitrary prescription limits assigned by the Board, even if the pharmacist complies with Tex. Health & Safety Code § 481.0764(a) and accesses the patient's PMP history prior to dispensing controlled substances.

**C.     Discriminatory Impact of the Board's Red Flag Factors**

31. The Red Flag Factors provide no safe harbors for pharmacists who comply with their corresponding duties despite being statistical outliers.

32. The Board's strict application of the Red Flag Factors further disproportionately affects pharmacies and pharmacists operating in low-income and minority communities.

33. Based on the Board's published disciplinary orders, between 2018 through

7

February 1, 2022, the Board discipline approximately two dozen pharmacies and pharmacists based on the Red Flag Factors.

33. 34. In particular, the licensees were disciplined for dispensing controlled substances in a pattern that the Board considered to demonstrate lack of professional judgment in that the licensee should have known, based on the Red Flag Factors, that the prescriptions were invalid.

35. The Board made no inquiries into whether the prescriptions were valid, whether patients were harmed, or whether the prescriber actually wrote the prescription in the majority of the cases. The discipline was solely on the grounds that the Board believed the prescriptions were invalid because the licensee's prescription data fell outside of the boundaries acceptable to the Board.

36. The overwhelming majority of licensees who were disciplined between 2018 through February 1, 2022 were operating in and around Houston, Texas, and in low-income communities with predominantly minority populations.

37. According to data provided by the Texas Department of State Health Services, in 2014, white pharmacists accounted for 51.1% of all pharmacists licensed in Texas, while African American and Latino pharmacists accounted for 14.9% and 10.4%, respectively.[1]

38. Yet, nearly all of the enforcement actions brought by the Board for violations pursuant to the Red Flag Factors have been against minority pharmacists and minority-owned

---

[1] Health Professions Resource Center, *Trends, Distribution, and Demographics – Pharmacist 2014*, Tex. Dept. of State Health Services (March 2015) [https://www.dshs.texas.gov/chs/hprc/publications/2014/2014PharmFactSheet.pdf]

8

pharmacies serving neighborhoods overwhelming populated by racial minorities.

39. Accordingly, the Board's enforcement of the Red Flag Factors not only disproportionately affect minority pharmacists and minority-owned pharmacies, but also communities with predominantly minority populations, as those communities were deprived of medically necessary services.

**D.     The Board's Discriminatory Intent**

40. The Board adopted the Red Flag Factors in order to target and discriminate against minority pharmacists and minority-owned pharmacies.

41. The Board also discriminates in its enforcement of violations under the Red Flag Factors.

42. While the Red Flag Factors may address concerns with prescription drug abuse, the factors were purposely developed to single out minority pharmacists providing legitimate services in minority communities and their patients, whose medical needs may result in the prescription patterns the Board arbitrarily deemed to be cause for discipline.

43. Moreover, the Board purposely provided no safe harbor provisions for pharmacists or pharmacies whose prescription patterns may violate the Red Flag Factors but are nonetheless valid.

44. Under the color of the law, the Board granted itself authority to determine the validity, or invalidity, of prescriptions for controlled substances based on a pharmacist's statistical output, and to discipline that pharmacist according to its arbitrary determinations.

45. The Board further used this authority to racially discriminate Plaintiffs and deny

Plaintiffs equal protection of law by initiating disciplinary proceedings against Plaintiffs for violations pursuant to the Red Flag Factors.

### E. The Board's Disciplinary Action Against Plaintiffs

46. On or about November 19, 2020, the Board issued a Statement of Allegations to Plaintiffs, alleging that, from April 20, 2019 through April 20, 2020 and April 21, 2020 through July 27, 2020, Plaintiffs dispensed prescriptions for controlled substances that demonstrate a lack of professional judgment and neglect of a pharmacist's corresponding responsibility in dispensing controlled substances in that Plaintiffs knew or should have known the prescriptions were invalid.

47. The Board alleged on information and belief that Plaintiffs dispensed prescriptions for controlled substances to patients in discernable patterns that rendered the prescriptions invalid, and that Plaintiffs demonstrated a lack of professional judgment in filling those prescriptions. In support of its allegations, the Board cited to Plaintiffs' PMP history. The Board did not allege any patient complaints or harm resulting from Plaintiff's prescription practices, nor did the Board allege any misconduct on the part of the prescriber.

48. Indeed, as of the time of filing this Complaint, the prescribers identified in the Board's allegations against Plaintiffs have not been subject to any discipline relating to their prescription practices.

49. On or about March 2, 2021, an informal settlement conference ("ISC") was held to resolve the disciplinary action prior to the commencement of formal proceedings. Plaintiffs retained the services of an expert witness who testified at the ISC. The expert reviewed the

Plaintiffs' prescription data for the period between April 2019 and April 2020, as well as conducted an interview with Rushin. At the ISC, the expert testified that, in his expert opinion, Plaintiffs exercised sound professional judgment in prescribing controlled substances, ensured proper patient safety, and complied with the strict procedures when filling controlled prescriptions, including accessing the PMP history of patients.

50. Despite the expert witness' findings, the Board filed formal charges against Plaintiffs on or about August 9, 2021.

51. At about the same time the formal charges were filed against Plaintiffs, the Board issued Plaintiffs' expert witness a Statement of Allegations, charging him with violating Board's rules and the Texas Controlled Substances Act ("TSCA") when he accessed the PMP without proper authorization in connection with the expert witness services he provided to Plaintiffs. The expert's access to the PMP was entirely legal and proper.

52. Following the ISC proceeding in the expert witness' disciplinary matter, the expert was informed that his participation in Plaintiffs' administrative action as an expert witness may adversely affect his own disciplinary action before the Board. The threat was contained in words to the effect that, if the expert witness stayed under the Board's radar, his disciplinary matter may be resolved favorably.

53. Due to the Board's frivolous allegations against the expert, the expert has attempted to resign as a testifying expert for Plaintiffs in the administrative action. The expert is no longer communicating with Plaintiffs despite contractual retention and payment of fees by Plaintiffs.

54. As such, the Board has extorted the expert with express or implied promise of leniency if he does not testify in the administrative action. In so doing, Plaintiffs have been deprived of procedural and substantive due process.

**G.  The Board Violated Plaintiffs' Right to Due Process**

55. There is no doubt that Plaintiffs have constitutionally protected liberty and property interests associated with their reputation, professional licenses, and economic well-being.

56. Thus, the Board must provide Plaintiffs with due process guaranteed by the Fourteenth Amendment to the United States Constitution before depriving them of their rights.

57. The Board, acting under the color of law, denied Plaintiffs their right to a fair hearing by preventing Plaintiffs from establishing a legitimate defense to the Board's allegations.

58. As a result of the Board's unlawful conduct, Plaintiffs are further denied any opportunity to challenge the allegations and findings relating to the PMP, since any expert witness Plaintiffs might retain would similarly face disciplinary actions from the Board.

59. Moreover, Plaintiffs have been harmed by the Board's enforcement of the unlawful disciplinary proceedings.

///

///

///

///

///

## V.
## FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS FOR VIOLATION OF THE FOURTEENTH AMENDMEND AND 42 U.S.C. § 1983
**(Procedural Due Process)**

60. Plaintiff realleges paragraphs 1 through 59 of this Complaint as if fully set forth below.

61. At all times relevant to the Complaint Defendants, individually and in their official capacity, acted under the color of state law in enforcement the Board's rules and commencing disciplinary action against Plaintiffs.

62. While acting under the color of state law, Defendants deprived Plaintiffs of their constitutional right to due process guaranteed by the Fourteenth Amendment to the United States Constitution.

63. Plaintiffs have constitutionally protected liberty and property interests associated with their reputation, professional licenses, and economic well-being.

64. Thus, Defendants must provide Plaintiffs with notice and a fair hearing before depriving Plaintiffs of their protected rights.

65. Defendants denied Plaintiffs procedural due process when it interfered with Plaintiffs' ability to establish a defense to the Board's allegations by bringing meritless disciplinary action against Plaintiffs' expert witness to prevent him from testifying at the administrative hearing.

66. Plaintiffs are entitled to declaratory judgment, permanent injunction, and compensatory damages because there is no plain, adequate, or speedy remedy at law to prevent

Defendants from continuing violations of Plaintiffs rights.

67. Plaintiffs are entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988.

## VI.
## SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS FOR VIOLATION OF THE FOURTEENTH AMENDMEND AND 42 U.S.C. § 1983
**(Substantive Due Process)**

68. Plaintiff realleges paragraphs 1 through 67 of this Complaint as if fully set forth below.

69. At all times relevant to the Complaint Defendants, individually and in their official capacity, acted under the color of state law in enforcement the Board's rules and commencing disciplinary action against Plaintiffs.

70. While acting under the color of state law, Defendants deprived Plaintiffs of their constitutional right to due process guaranteed by the Fourteenth Amendment to the United States Constitution.

71. Plaintiffs have constitutionally protected liberty and property interests associated with their reputation, professional licenses, and economic well-being.

72. Thus, Plaintiffs are guaranteed protection from unreasonable government interference with their protected rights.

73. Defendants unreasonably interfered with Plaintiffs' substantive due process rights when it enacted and enforced the Red Flag Factors against Plaintiffs in an arbitrary and unreasonable manner.

74. Defendants further unreasonably interfered with Plaintiffs' right to establish a

defense to the Board's allegations and are continuing to subject Plaintiffs to unlawful disciplinary proceedings.

75. Plaintiffs are entitled to declaratory judgment, permanent injunction, and compensatory damages because there is no plain, adequate, or speedy remedy at law to prevent Defendants from continuing violations of Plaintiffs rights.

76. Plaintiffs are entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988.

## VII.
## THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS FOR VIOLATION OF THE FOURTEENTH AMENDMEND AND 42 U.S.C. §§ 1981 AND 1983
**(Equal Protection)**

77. Plaintiff realleges paragraphs 1 through 76 of this Complaint as if fully set forth below.

78. At all times relevant to the Complaint Defendants, individually and in their official capacity, acted under the color of state law in enforcement the Board's discriminatory rules against Plaintiffs.

79. While acting under the color of state law, Defendants deprived Plaintiffs of their constitutional right to equal protection of law guaranteed by the Fourteenth Amendment to the United States Constitution.

80. Plaintiffs belong to a protected minority class that have been subject to disparate treatment by the enactment and enforcement of Defendants' rules and regulations.

81. Defendants enacted the rules and regulations relating to the Red Flag Factors with discriminatory intent. Defendants further enforced those rules against Plaintiffs with

discriminatory purpose.

82. Plaintiffs are entitled to declaratory judgment, permanent injunction, and compensatory damages because there is no plain, adequate, or speedy remedy at law to prevent Defendants from continuing violations of Plaintiffs rights.

83. Plaintiffs are entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988.

## PRAYER FOR RELIEF

Accordingly, Plaintiffs pray for relief as follows:

A. For declaratory judgment that Defendants' conduct unlawfully denied Plaintiffs procedural and substantive due process in that Defendants have unreasonably interfered with Plaintiffs' protected liberty and property interest guaranteed by the Fourteenth Amendment to the United States Constitution;

B. For declaratory judgment that Defendants' enactment and enforcement of the Red Flag Factors violate the Fourteenth Amendment to the United States Constitution;

C. For injunctive relief requiring Defendants to cease discriminatory enforcement of its rules and regulations;

D. For injunctive relief requiring Defendants to cease continuing violations of Plaintiffs' rights;

E. For compensatory damages relating to Defendants' violations of Plaintiffs' rights;

F. For attorneys' fees and costs; and

G. All other relief this Court finds appropriate and just.

DATED: February 21, 2022　　　　Respectfully submitted,

                                  KHOURI LAW OFFICE, PLLC

By:　　*/s/ Michael J. Khouri*
      MICHAEL J. KHOURI
      Texas Bar No. 24073809
      California Bar No. 97654
      8150 N. Central Expressway, 10th Floor
      Dallas, Texas 75206
      Phone: (949) 336-2433
      Facsimile: (949) 387-0044
      Email: mkhouri@khourilaw.com

*Attorneys for Plaintiffs*,
BLUE MINT PHARMCO, LLC
JONA RUSHIN, R.PH.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a jury trial on all the issues so triable.

DATED: February 21, 2022

Respectfully submitted,

KHOURI LAW OFFICE, PLLC

By: */s/ Michael J. Khouri*
MICHAEL J. KHOURI
Texas Bar No. 24073809
California Bar No. 97654
8150 N. Central Expressway, 10th Floor
Dallas, Texas 75206
Phone: (949) 336-2433
Facsimile: (949) 387-0044
Email: mkhouri@khourilaw.com

*Attorneys for Plaintiffs*,
BLUE MINT PHARMCO, LLC
JONA RUSHIN, R.PH.